# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-1834

_____

Randall Ehlers

*Plaintiff - Appellee*

v.

City of Rapid City, a municipal corporation, its agents, subsidiaries and employees

*Defendant*

Scott Dirkes, individually and in his official capacity; Jim Hansen, individually and in his official capacity

*Defendants - Appellants*

Robert Rybak, individually and in his official capacity; John Doe 1-10

*Defendant*s

_____

No. 16-1835

_____

Randall Ehlers

*Plaintiff - Appellee*

v.

City of Rapid City, a municipal corporation, its agents, subsidiaries and employees; Scott Dirkes, individually and in his official capacity; Jim Hansen,

individually and in his official capacity

*Defendant*s

Robert Rybak, individually and in his official capacity

*Defendant - Appellant*

John Doe 1-10

*Defendant*

_____

Appeals from United States District Court
for the District of South Dakota - Rapid City

_____

Submitted: November 15, 2016
Filed: January 25, 2017

_____

Before COLLOTON, BEAM, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Plaintiff-Appellee Randall Ehlers brought suit under 42 U.S.C. § 1983 against Officers Jim Hansen and Scott Dirkes of the Rapid City Police Department and Trooper Robert Rybak of the South Dakota State Police for unlawful arrest and excessive force. Hansen, Dirkes, and Rybak appeal the district court's order denying their motions for summary judgment on the basis of qualified immunity. For the following reasons, we reverse.

# I.

On December 21, 2010, Randall Ehlers ("Ehlers") and his wife, three adult children, and several friends attended a Rush hockey game at Rushmore Plaza Civic Center in Rapid City, South Dakota. Mrs. Ehlers and her son Derrik Ehlers were at a table in the hospitality area when the table was jostled and beer spilled on Mrs. Ehlers. Some confusion ensued, and Civic Center staff asked Mrs. Ehlers to leave and escorted her out of the area. The Ehlers children began to yell profanities at the staff, and they were also instructed to leave. An altercation between the children and security personnel occurred shortly thereafter. Rapid City Police responded, and officers ultimately arrested several of the Ehlers children and a family friend.

Meanwhile, Ehlers was advised of the confrontation involving his family, and he proceeded outside. At the time, Officer Hansen was in the process of arresting Derrik Ehlers and was about to place him in the police car. Ehlers approached Hansen, asking Hansen questions regarding his son's arrest. Officer Hansen told Ehlers to step back to the curb and pointed towards the Civic Center, but Ehlers stepped closer to Hansen and asked more questions about his son. Officer Hansen pointed to the Civic Center again, stating that before he counted to three Ehlers should be on the far sidewalk. At this time, Officer Dirkes pulled up in his patrol car. Dirkes testified that Officer Hansen instructed him to arrest Ehlers, and Dirkes's dash camera picked up audio of Hansen saying, "Take this guy, he's not listening." Ehlers finally complied with Hansen's instructions and proceeded to walk towards the Civic Center.

Dash camera video shows that Dirkes approached Ehlers and instructed him twice to put his hands behind his back. When Ehlers ignored him and continued to walk toward the Civic Center, Dirkes executed a spin takedown, taking hold of Ehlers's neck and shoulder to bring him to the ground. Ehlers landed on his back with his arms in the air, and Dirkes turned him over onto his hands and knees. Dirkes

pushed Ehlers's head down and shouted for him to put his hands behind his back. Another officer approached and put his right knee on Ehlers's left shoulder, took Ehlers's left arm, and placed Ehlers face down on the ground. A third officer took Ehlers's right leg and placed it across the back of his left leg, then pressed him into the ground by lifting and pressing the left leg toward Ehlers's back. Trooper Rybak then approached, took Ehlers's left arm from underneath his body and then allegedly pushed the arm forward and locked Ehlers's elbow before bringing it behind him to handcuff him.[1] Ehlers alleged that he suffered shoulder and knee injuries, including a damaged rotator cuff.

Meanwhile, Dirkes prepared his taser for drive stun and put the prongs against Ehlers's lower back, warning Ehlers that he was going to use the taser. The audio recording picked up someone saying "let him have it," but the taser initially did not fire when Dirkes attempted to engage it because the safety switch was on. Dirkes released the safety switch and the taser discharged. Although Dirkes claims that he moved the prongs off Ehlers at the last moment, Ehlers claims that the taser did shock him. Ehlers was then handcuffed and arrested for resisting arrest and obstructing a police officer.

Ehlers brought unlawful arrest and excessive force claims against Hansen, Dirkes, and Rybak under 42 U.S.C. § 1983. The defendants moved for summary judgment on the basis of qualified immunity, and the district court denied the motions. Hansen, Dirkes, and Rybak appeal.

---

[1]The parties dispute whether and to what extent Rybak employed an "arm bar" maneuver.

**II.**

We have authority under the collateral order doctrine to hear an interlocutory appeal of a denial of qualified immunity. *Shannon v. Koehler*, 616 F.3d 855, 861 (8th Cir. 2010). However, we are limited to reviewing the denial of summary judgment only insofar as it concerns questions of law, not factual disputes. *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012); *see Shannon*, 616 F.3d at 861. Accordingly, "[w]e review a district court's qualified immunity determination on summary judgment *de novo*, viewing the record in the light most favorable to [the plaintiff] and drawing all reasonable inferences in [his] favor." *Shannon*, 616 F.3d at 861-62 (quoting *Langford v. Norris*, 614 F.3d 445, 459 (8th Cir. 2010) (alterations in original)).

To determine whether the defendants are entitled to qualified immunity, we ask two questions: "(1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation." *Jones*, 675 F.3d at 1161 (quoting *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)). The court may consider these steps in any order, *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009), but "[u]nless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009). In order to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). While prior cases need not have expressly determined that the action in question is unlawful, "in the light of pre-existing law the unlawfulness must be apparent." *Id.* Reciting an abstract right at a high level of generality will not suffice. *Id.* at 639-40.

## A.

First, we address Ehlers's unlawful arrest claim against Officer Hansen. "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011) (quoting *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005)). Probable cause exists to make a warrantless arrest "when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Id.* (quoting *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010)). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is 'objectively reasonable.'" *Id.* (quoting *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008)).

Ehlers was arrested for obstructing a police officer and resisting arrest. In South Dakota, a person commits the crime of obstructing a police officer if he "by using or threatening to use violence, force, or physical interference or obstacle, intentionally obstructs, impairs, or hinders the enforcement of the criminal laws or the preservation of the peace by a law enforcement officer . . . acting under color of authority . . . ." S.D. Codified Laws § 22-11-6. Obstructing a police officer "does not require that there be a technical or physical assault upon the officers, nor that violent or physical resistence be exerted." *State v. Dale*, 379 N.W.2d 811, 815 (S.D. 1985). Refusing to comply with a police officer's orders can constitute obstruction. *State v. Hodges*, 631 N.W.2d 206, 211 (S.D. 2001) (finding probable cause of obstructing a police officer where individual refused to obey officer's commands to stop and proceeded to hide in a restroom); *State v. Wiedeman*, 321 N.W.2d 539, 541-42 (S.D. 1982) (upholding conviction for obstructing a police officer where the defendant disobeyed officer's commands to move and persisted in blocking the officer from dispersing a crowd).

Officer Hansen had arguable probable cause to arrest Ehlers for obstructing a police officer. Ehlers initially approached Hansen asking questions about his son's arrest. At the time, Hansen was standing beside his patrol car about to secure a handcuffed Derrik Ehlers inside. As Ehlers approached, Hansen pointed towards the Civic Center and ordered Ehlers to step back to the curb. Instead, Ehlers disobeyed Hansen's unequivocal instructions to leave, approached Hansen, and lingered near him. The district court found and Ehlers concedes that Ehlers refused to comply with Hansen's instructions for at least twenty seconds. Both the district court and Ehlers emphasize that this was a short delay that could not arguably constitute interference with Hansen's duties. However, the duration of interference is not relevant to the existence of interference. Section 22-11-6 does not include duration as an element of obstruction, and the South Dakota Supreme Court has found that failure to obey a police instruction to move constitutes physical interference at the moment the person refuses to comply. *Wiedeman*, 321 N.W.2d at 542. A reasonable officer in Hansen's position would at least consider the possibility that Ehlers could produce a weapon or otherwise attack him, especially given that Ehlers had directly disobeyed unequivocal orders, was in close proximity to Hansen, and continued to approach Hansen while he was arresting Ehlers's son. In order to continue to place Derrik in the patrol car, Hansen would have had to turn his back to Ehlers and leave himself vulnerable to this risk. Thus, it is not unreasonable that Hansen would interpret Ehlers's physical presence, close proximity, and refusal to comply as threatening and preventing him from completing the task at hand. As a result, Hansen had arguable probable cause to believe that Ehlers's behavior constituted the crime of obstruction, and Hansen is entitled to qualified immunity.[2]

---

[2]Because we determine that Hansen had arguable probable cause to arrest Ehlers for obstructing a police officer, we need not decide whether he had arguable probable cause to arrest Ehlers for resisting arrest.

**B.**

Next, we address Ehlers's unlawful arrest and excessive force claims against Officer Dirkes.

*1.    Unlawful Arrest*

Dirkes argues that he is entitled to qualified immunity on the unlawful arrest claim as an assisting officer. The district court concluded that the record was unclear whether Hansen instructed Dirkes to arrest Ehlers, and, consequently, the court was obligated to assume for purposes of summary judgment that Dirkes did not receive such an instruction. However, this conclusion contradicts the clear record. Both audio and video from patrol car dash cameras confirm that Hansen instructed Dirkes to arrest Ehlers. The dash camera video from an uninvolved officer's patrol car shows Hansen speaking with Ehlers and instructing him to move to the far sidewalk. When Ehlers fails to comply, Hansen turns and speaks to someone off screen, pointing to Ehlers. Audio from Officer Dirkes's dash camera records Hansen saying, "Take this guy, he's not listening." Although we must view the record in the light most favorable to the plaintiff and draw all reasonable inferences in his favor, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (considering video of a high speed pursuit). Accordingly, we are not bound to adopt Ehlers's version of the facts in this respect and conclude that Hansen instructed Dirkes to arrest Ehlers.

Generally, an assisting officer is entitled to rely on the probable cause determination of the arresting officer and may receive qualified immunity as long as the reliance is reasonable. *Doran v. Eckold*, 409 F.3d 958, 965 (8th Cir. 2005) (finding that an officer assigned to operate a battering ram had no constitutional duty

to verify the supervising officer's decision to execute a no-knock entry based on "the settled principle that law enforcement officers may rely on information provided by others in the law enforcement community, so long as the reliance is reasonable"); *see also Mitchell v. Shearrer*, 729 F.3d 1070, 1073 (8th Cir. 2013) (noting that "[t]here is no evidence to suggest that [the assisting officers] were involved in the decision to arrest [the plaintiff] or that they knew or should have known that the seizure was unlawful"). Other circuits likewise do not require assisting officers to have independent probable cause in order to receive qualified immunity. *See Stearns v. Clarkson*, 615 F.3d 1278, 1286 (10th Cir. 2010); *Brent v. Ashley*, 247 F.3d 1294, 1305-06 (11th Cir. 2001); *Liu v. Phillips*, 234 F.3d 55, 57-58 (1st Cir. 2000). Nothing in the record indicates that Dirkes's reliance on Hansen's instruction was unreasonable, and Ehlers does not argue to the contrary. Accordingly, Officer Dirkes is entitled to qualified immunity from Ehlers's unlawful arrest claim.

### 2.  *Excessive Force*

Next, Ehlers contends that Dirkes took two actions constituting excessive force: 1) executing a spin takedown, and 2) shocking Elhers with the taser. To determine "whether a particular use of force was excessive, [the court] consider[s] whether it was objectively reasonable under the circumstances[,] . . . rely[ing] on the perspective of a reasonable officer present at the scene rather than the '20/20 vision of hindsight.'" *Carpenter v. Gage*, 686 F.3d 644, 649 (8th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)); *see Kukla v. Hulm*, 310 F.3d 1046, 1050 (8th Cir. 2002) ("Force is excessive when an officer's actions are not objectively reasonable in light of the facts and circumstances confronting him.").

First, Officer Dirkes did not violate a constitutional right by executing the takedown. Officer Dirkes's dash camera video shows Dirkes approach Ehlers, point to him, and twice order him to put his hands behind his back. Instead of complying, Ehlers continued walking towards the Civic Center, passing Dirkes closely as Dirkes

gave the instruction a second time. A reasonable officer in Dirkes's position would interpret this behavior as noncompliant. Thus, Ehlers's argument that no force was appropriate because he was being arrested for a nonviolent misdemeanor and was not resisting is inapplicable because he at least appeared to be resisting. *See Small v. McCrystal*, 708 F.3d 997, 1005 (8th Cir. 2013) ("Force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest . . . .") (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009)). Accordingly, Dirkes was entitled to use the force necessary to effect the arrest. *See Carpenter*, 686 F.3d at 650. Unlike *Small v. McCrystal*, 708 F.3d 997, 997-1005 (8th Cir. 2013), where an officer tackled an arrestee from behind with no warning, Dirkes provided two warnings before executing the takedown procedure. Even accepting Ehlers's account that he did not hear Dirkes's instructions, an arrestee's subjective motive does not bear on how reasonable officers would have interpreted his behavior. *See Carpenter*, 686 F.3d at 650. As a result, the takedown did not violate a constitutional right.

Second, we address Dirkes's use of a taser. Whether Dirkes actually used the taser on Ehlers is a matter of dispute, but because the court must view the facts in the light most favorable to Ehlers, the following analysis assumes that Dirkes did shock Ehlers with the taser. However, Officer Dirkes did not violate a constitutional right by using the taser. *Carpenter v. Gage* is directly on point. 686 F.3d at 649-50. In *Carpenter*, an officer tasered an arrestee who was laying on his stomach with his hands underneath him and refusing to give his hands to officers despite orders to do so. 686 F.3d at 649. The court determined that "[e]ven if Carpenter's motive was innocent, the deputies on the scene reasonably could have interpreted Carpenter's actions as resistance and responded with an amount of force that was reasonable to effect the arrest." *Id.* at 650. Although Carpenter had previously threatened EMTs with a baseball bat, the court did not consider this behavior in analyzing whether using the taser was reasonable under the circumstance. *See id.* at 649-50. Likewise, Dirkes and the other officers at the scene reasonably could have interpreted Ehlers's

behavior of continuing to lay on his hands and refusing to comply with instructions as resistance and reasonably responded in the same way the officers in *Carpenter* responded, regardless of whether Ehlers actually intended to resist. As a result, Dirkes did not violate a constitutional right by using the taser.

Therefore, Dirkes is entitled to qualified immunity on both of Ehlers's claims.

**C.**

Finally, we address Ehlers's excessive force claim against Trooper Rybak. What maneuver Rybak performed to handcuff Ehlers and whether it was necessary to effect the arrest are matters of significant dispute.[3] However, even assuming that Rybak performed an arm bar as Ehlers describes and that the maneuver violated a constitutional right, the right was not clearly established.

The right to be free from excessive force is, of course, well established. *Kukla*, 310 F.3d at 1050. However, we cannot "define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Rather, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* (quotation omitted). "Such specificity is especially important in the Fourth Amendment context, where . . . [i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.* (quotation omitted) (alteration in original). In order for the right to be clearly

---

[3]We note that we cannot consider Rybak's primary argument on appeal—that he did not perform the maneuver Ehlers describes. *See Heartland Acad. Cmty. Church v. Waddle*, 595 F.3d 798, 807 (8th Cir. 2010) ("The Supreme Court made clear we must eschew fact-intensive '[W]e didn't do it!' defenses and confine appellate review to 'neat abstract issues of law.'") (quoting *Johnson v. Jones*, 515 U.S. 304, 316-17 (1995) (alteration in original)).

established, "existing precedent must have placed the constitutional question beyond debate" so that "a reasonable official would understand that what he is doing violates that right." *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 989 (8th Cir. 2015) (quotations omitted).

The law did not clearly establish in December 2010 that the use of an arm bar in this context constitutes excessive force. Indeed, the only instance in which we have considered the merits of the use of an arm bar occurred after 2010 and concerned an arm bar as a takedown maneuver, not as a method of handcuffing a suspect. *See Hicks v. Norwood*, 640 F.3d 839, 842 (8th Cir. 2011). More broadly, we have held that officers may use force to handcuff a suspect who is resisting, even if that force causes pain. *See, e.g.*, *Blazek v. City of Iowa City*, 761 F.3d 920, 924 (8th Cir. 2014) (analyzing the state of the law in 2009). The only cases Ehlers provides to support a finding of clearly established law concern the use of force against an individual who is not resisting. *See, e.g.*, *Brown*, 574 F.3d at 499 ("[I]t is clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist . . . .") (citation omitted). As discussed above, the officers reasonably interpreted Ehlers's behavior as resistance. The officers also reasonably considered Ehlers's free hand a potential threat. *See Carpenter*, 686 F.3d at 650. As a result, Ehlers's cases are inapposite. A reasonable officer would not have understood the action in question to constitute excessive force.[4] Thus, the law was not clearly established, and Rybak is entitled to qualified immunity.

---

[4]Ehlers relies heavily on an arguable concession Rybak made in his deposition testimony that an arm bar would not be appropriate under the circumstances. However, even if we assume that Rybak did make such a concession, an officer's subjective belief is not relevant to whether the law is clearly established, "which is a legal question for us to determine." *Johnson v. Carroll*, 658 F.3d 819, 827 (8th Cir. 2011).

## III.

For the above reasons, we reverse the district court's decision denying Officer Hansen, Officer Dirkes, and Trooper Rybak qualified immunity on Ehlers's § 1983 claims and remand for proceedings not inconsistent with this opinion.[5]

_____

[5]Ehlers also asserted various state law claims against Hansen, Dirkes, and Rybak. The district court dismissed all of them except assault and battery claims against Dirkes and Rybak. None of the parties discuss these remaining claims on appeal. The state law claims were before the district court under supplemental jurisdiction. A district court generally has discretion to decline to exercise supplemental jurisdiction where it has dismissed all the claims over which it has original jurisdiction. 28 U.S.C. § 1367(c); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009). Accordingly, we leave the question of whether to exercise supplemental jurisdiction over Ehlers's state law claims for the district court to consider on remand.