# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3389

_____

Kirk D. Vester

*Plaintiff - Appellant*

v.

Daniel Hallock, in his Official Capacity

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: June 7, 2017
Filed: July 25, 2017

_____

Before WOLLMAN, ARNOLD, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Kirk D. Vester appeals the district court's[1] grant of summary judgment as to his excessive-force claim against Deputy Sheriff Daniel Hallock. Vester argues that Hallock's use of an "arm bar technique" was objectively unreasonable and that he is

_____

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

therefore not entitled to qualified immunity. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

On May 30, 2013, Hallock was dispatched to the 101 Bar & Grill in Hadar, Nebraska, in response to a report that a man had threatened to stab several patrons with a knife. The dispatcher advised Hallock that the suspect had been disarmed but warned that he had threatened to get another knife from his car. Hallock was also told that the man drove a black 1997 Chevy Camaro.

Several minutes later, Hallock arrived at the scene and discovered Vester, who matched the suspect's description, sitting in a black Camaro outside the bar. Hallock ordered Vester to get out of the vehicle five times before he finally complied. Hallock then issued three separate commands for Vester to get on either the ground or his knees. Vester ignored these instructions, instead opting to turn his back to Hallock and place his hands on the car. Concerned that Vester might have a weapon, Hallock wanted to get him to the ground, as his experience suggested that it would be safer to disarm him in a prone position. Accordingly, Hallock approached Vester from behind, seized his right arm, and used the arm-bar technique to take him swiftly to the ground. Vester was unable to use his free arm to brace the fall and landed face-first on the ground, sustaining contusions, abrasions, and lacerations to his head and hand. After securing Vester, Hallock noticed his injuries and immediately called for a rescue squad. Vester was then taken to the emergency room for medical treatment.

Vester subsequently brought the present action under 42 U.S.C. § 1983, alleging that Hallock used excessive force to effect his arrest in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution. After filing an answer, Hallock moved for summary judgment based on qualified immunity. The district court agreed that Hallock was entitled to qualified immunity and granted his motion for summary judgment, finding that it was not clearly established that Vester had a

right to be free from Hallock's use of the arm-bar technique under these circumstances.  Vester timely appealed.

We review a district court's grant of summary judgment *de novo.  Bishop v. Glazier*, 723 F.3d 957, 960-61 (8th Cir. 2013) (citation omitted).  "Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Johnson v. Carroll*, 658 F.3d 819, 825 (8th Cir. 2011) (citations omitted); Fed. R. Civ. P. 56. Although Vester identifies several purported factual disputes, the parties appear to agree as to all material facts, so we read his argument as one focused on the legal question of whether Hallock was entitled to qualified immunity.  *See McKenney v. Harrison*, 635 F.3d 354, 359 (8th Cir. 2011) ("Once the predicate facts are established, the reasonableness of the official's conduct under the circumstances is a question of law." (citation omitted)).

"Qualified immunity shields government officials from liability for civil damages and the burdens of litigation insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 358 (quotation omitted).  "We analyze qualified immunity in two steps: (1) whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Peterson v. Kopp*, 754 F.3d 594, 598 (8th Cir. 2014) (alteration in original) (quotation omitted).  As we recently reaffirmed, for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008 (8th Cir. 2017) (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  In other words, to lose the shield of immunity, an officer must have been "plainly

incompetent" or must have "knowingly violate[d] the law." *See Gladden v. Richbourg*, 759 F.3d 960, 964 (8th Cir. 2014) (citation omitted).

Vester contends that Hallock infringed his Fourth Amendment right to be free from unreasonable seizures by using excessive force in arresting him. *See Chambers v. Pennycook*, 641 F.3d 898, 905 (8th Cir. 2011) (noting that an excessive-force claim related to an arrest "is most properly characterized as one invoking the protections of the Fourth Amendment" (citations omitted)). In evaluating this sort of constitutional claim, "the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Johnson*, 658 F.3d at 825 (quotation omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 826 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). For example, we have considered as relevant "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citation omitted).

Based on the circumstances Hallock confronted upon arriving at the 101 Bar & Grill, his use of the arm-bar technique fell short of the level of force required to constitute a constitutional violation. Although Vester neither visibly possessed a weapon nor attempted to resist arrest prior to the takedown, a variety of factors suggest that the amount of force Hallock employed was reasonable under the circumstances. Particularly relevant are the severity of Vester's criminal conduct of threatening to stab various individuals, his refusal to comply with Hallock's repeated commands, the very real possibility that he still had a concealed knife on his person after exiting the vehicle, the resulting potential threat to Hallock's safety, and the fact that Hallock was making the arrest without any backup. *Cf. Hicks v. Norwood*, 640 F.3d 839, 842 (8th Cir. 2011) (finding reasonable an officer's determination that the arrestee-plaintiff's refusal to change into a jail uniform and his aggressive leap off of

-4-

a booking-room bench constituted a safety threat and therefore affirming grant of qualified immunity).

However, even assuming that Hallock's use of the arm-bar technique rose to the level of a constitutional violation, we reject Vester's claim that his right to be free from such force in this factual context was clearly established at the time of his arrest. In demonstrating that a right is clearly established, "[i]t is unnecessary to have 'a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Parker v. Chard*, 777 F.3d 977, 980 (8th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Vester primarily argues that the general "right to be free from excessive force[, which] dates back to the adoption of the Bill of Rights," compels us to reverse the grant of qualified immunity. However, as the district court correctly noted, "'Qualified immunity is no immunity at all if clearly established law' can be defined at such a 'high level of generality.'" *See City & Cty. of S.F., Calif. v. Sheehan*, 135 S. Ct. 1765, 1776 (2015); *see also Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) ("[W]e have repeatedly told courts . . . not to define clearly established law at a high level of generality since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." (quotation and citation omitted)).

Alternatively, Vester contends that relevant precedent demonstrates as clearly established his right to be free from the use of the arm-bar technique in these circumstances. First, he points to two unpublished district court opinions from a different district to suggest that Hallock's deployment of the arm-bar technique was unlawful. *See B.J.R. ex rel. Garcia v. Golgart*, 2013 WL 3455598 (D. Minn. July 9, 2013) (unpublished); *Stockton v. Auren*, 2008 WL 1994992 (D. Minn. May 5, 2008) (unpublished). Second, Vester cites two Eight Circuit opinions for the proposition that "a reasonable officer would conclude it is inappropriate to use force on a noticeably unarmed suspect who does not actively resist or threaten the officer." *See Shekleton v. Eichenberger*, 677 F.3d 361 (8th Cir. 2012); *Johnson*, 658 F.3d at 819.

-5-

Although each of these cases can be distinguished on a number of factual bases, the most significant consideration that separates this case is that Hallock had every reason to think that Vester might have retrieved a second knife from his vehicle and thus reasonably believed that Vester presented a serious risk to his safety. Much more apposite than the cases cited by Vester is our recent decision in *Ehlers v. City of Rapid City*. In *Ehlers*, we reversed the denial of qualified immunity to an officer who employed a similar takedown maneuver based on our finding that the officer reasonably interpreted as resistance Ehler's refusal to comply with two commands to back away while his son was being taken into custody. 846 F.3d at 1011. Although Ehlers was unarmed, we held that another officer was reasonable in considering Ehler's free hand to be a potential threat during his subsequent arrest. *Id.* at 1012. Comparatively, the circumstances Hallock confronted were far more threatening. Vester repeatedly refused to comply with Hallock's commands, which were issued after it was reported that he had threatened to stab several individuals and had told them he was going to retrieve a second knife from his car. Moreover, unlike the three officers involved in Ehlers's arrest, Hallock was required to take Vester into custody without backup. Thus, especially in light of our holding in *Ehlers* that the use of the arm-bar technique did not violate a clearly established right, we reject Vester's claim that his right to be free from such force was clearly established under the more dangerous circumstances Hallock confronted in this case.

Accordingly, the district court's grant of summary judgment based on its finding of qualified immunity is affirmed.

_____