*Aponte v. Kanbur*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of August, two thousand twenty-one.

PRESENT:
> BARRINGTON D. PARKER,
> GERARD E. LYNCH,
> JOSEPH F. BIANCO,
> *Circuit Judges*.

_____

John R. Aponte,

> *Plaintiff-Appellant*,

v.                                                          20-624

Police Officer Mehmet Kanbur, Shield # 4045,

> *Defendant-Appellee*.[*]

_____

FOR PLAINTIFF-APPELLANT:          LAUREN KAPLIN (Adam Brent Siegel, New York, NY, *on the brief*), Freshfields Bruckhaus Deringer US LLP, Washington, DC.

FOR DEFENDANT-APPELLEE:          LORENZO DI SILVIO (Richard P. Dearing, Scott Shorr, *on the brief*), Assistant Corporation Counsel, *for* James E. Johnson, Corporation

---

[*] The Clerk of Court is respectfully directed to amend the caption as above.

Counsel of the City of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Donnelly, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant John Aponte appeals from the January 16, 2020 judgment of the United States District Court for the Eastern District of New York (Donnelly, *J.*). Aponte brought a single claim of excessive force against Defendant-Appellee Officer Mehmet Kanbur under 42 U.S.C. § 1983, arising out of an incident at his home on August 10, 2015. In particular, Aponte alleged that, while at his front door with other New York Police Department ("NYPD") officers in connection with a "domestic violence [i]ssue," Kanbur used "a martial arts arm lock choke hold" against Aponte, slammed him against a wall, and, in the process, strangled him without any provocation whatsoever. Joint App'x at 18. Following a four-day jury trial, the jury returned a verdict in favor of Kanbur.

On appeal, Aponte argues that he should be granted a new trial on three grounds. First, he contends that the district court abused its discretion by declining to admit evidence contained in an NYPD Internal Affairs Bureau ("IAB") report regarding Kanbur's off-duty arrest in connection with a domestic dispute.[1] Second, Aponte asserts that the district court abused its

---

[1] An application was made to seal the oral argument because the IAB report and related evidence were the subject of a protective order in the district court. That application was initially granted to allow the parties an opportunity to argue for the sealing of the portion of the oral argument discussing that evidence. After hearing the position of the parties on the sealing issue, we denied the application to seal any portion of the oral argument and conducted the argument in public. Thus, the Court's prior sealing order is vacated.

discretion when it excluded the NYPD Patrol Guide and NYPD Police Student Guide (together, the "NYPD Guides") from evidence. Lastly, Aponte argues that the district court erred in declining to instruct the jury that the Fourth Amendment generally requires police officers to make arrests pursuant to valid arrest warrants, and instructing the jury that whether the police officers in this case had an arrest warrant was irrelevant to their conclusion as to whether Kanbur used excessive force. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to affirm.

## I.       **The Evidentiary Rulings**

"We review evidentiary rulings for abuse of discretion and reverse only for manifest error." *Tardif v. City of New York*, 991 F.3d 394, 409 (2d Cir. 2021). District courts are afforded "wide latitude . . . in determining whether evidence is admissible." *Manley v. AmBase Corp.*, 337 F.3d 237, 247 (2d Cir. 2003) (internal quotation marks omitted). Accordingly, "[e]ven if we conclude that the district court abused its discretion . . . 'an erroneous evidentiary ruling warrants a new trial only when a substantial right of a party is affected, as when a jury's judgment would be swayed in a material fashion by the error.'" *Warren v. Pataki*, 823 F.3d 125, 138 (2d Cir. 2016) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 155 (2d Cir. 2012)); *see also Tesser v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 370 F.3d 314, 319 (2d Cir. 2004) ("An erroneous evidentiary ruling that does not affect a party's substantial right is thus harmless." (internal quotation marks omitted)).

### A.  Evidence of the Alleged Domestic Dispute

Aponte first challenges the district court's decision to exclude from evidence an IAB report (including the evidence contained therein) pertaining to Kanbur's arrest for allegedly choking his wife during a domestic dispute. Although the charges resulting from the arrest were dismissed,

Aponte argued that evidence of Kanbur's arrest and the related IAB investigation and report regarding the domestic dispute were admissible to show a pattern of using chokeholds when angered because his authority was verbally challenged. We conclude that the district court did not abuse its discretion in determining that such evidence was precluded by Federal Rule of Evidence 404(b)(1) because it was an impermissible attempt to show "pure propensity," Joint App'x at 730, and was not admissible under the circumstances of this case for any of the proper purposes enumerated in Rule 404(b)(2).

We are similarly unpersuaded by Aponte's related contention that the district court abused its discretion when it denied his request to allow his trial counsel to cross-examine Kanbur regarding his purported failure to notify the NYPD about his arrest following the alleged domestic dispute. Aponte argues that this line of questioning was admissible to attack Kanbur's credibility. As to this request, the district court ruled that evidence of Kanbur's alleged failure to report was only "marginally relevant" to his credibility and concluded that Aponte again sought to question Kanbur on these issues only to show propensity. Joint App'x at 740.

To be sure, under Federal Rule of Evidence 608(b), a district court "may, on cross-examination, allow [specific instances of a witness's conduct] to be inquired into if they are probative of the [witness's] character for truthfulness or untruthfulness[.]" However, like evidence admissible under Rule 404(b), questioning that goes to a witness's character for truthfulness or untruthfulness is subject to Rule 403. *See Hynes v. Coughlin*, 79 F.3d 285, 294 (2d Cir. 1996) ("The trial judge has discretion under Rules 608(b) and 403 to determine whether [questioning related to a witness's character for truthfulness], though relevant, should be excluded."); *see also* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative

4

value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). In the instant case, the district court considered the risk of unfair prejudice to Kanbur due to the jury's potential improper consideration of the alleged conduct as propensity evidence and its marginal relevance to Kanbur's credibility. We find no abuse of discretion in the district court's balancing of these factors under Rule 403 and its decision to preclude such evidence even on the credibility issue.[2]

## B. The NYPD Guides

Aponte further contends that that the district court abused its discretion in declining to admit the NYPD Guides, which unequivocally state that NYPD personnel are prohibited from using chokeholds. *See* Joint App'x at 646 (NYPD Patrol Guide stating that "[m]embers of the [NYPD] will <u>NOT</u> use chokeholds"), 678 (NYPD Police Student's Guide stating that "[t]he [NYPD's] policy . . . is clear: choke holds may not be used by members of the [NYPD] against other persons"). Although it ruled that it would allow questioning on NYPD policies, the district court precluded the NYPD Guides, stating that "the patrol guide itself is not going to be permitted into evidence because it's not the standard that the jury is going to be applying, it's a guide for officers." Joint App'x at 731.[3] Even assuming that this evidentiary ruling was an abuse of

---

[2] On appeal, Aponte also argues that Kanbur's alleged false testimony about the alleged domestic dispute during his deposition was relevant to his credibility. However, Aponte never raised this ground for admission with the district court. In any event, any falsity with regard to Kanbur's deposition testimony could only be proven through extrinsic evidence, which is expressly precluded under Rule 608(b).

[3] We presume that this ruling applied to the NYPD Student's Guide as well.

discretion, we conclude that the preclusion of the NYPD Guides did not affect Aponte's substantial rights and was, therefore, harmless.

As noted above, "an erroneous evidentiary ruling warrants a new trial only when a substantial right of a party is affected, as when a jury's judgment would be swayed in a material fashion by the error." *Warren*, 823 F.3d at 138 (quoting *Lore*, 670 F.3d at 155). To the extent the complaining party's substantial rights are unaffected, such an erroneous ruling is considered to be harmless. *Tesser*, 370 F.3d at 319. "Whether an evidentiary error implicates a substantial right depends on the likelihood that the error affected the outcome of the case." *Id.* (internal quotation marks omitted).

Here, the jury heard Kanbur's own testimony that NYPD regulations prohibit the use of chokeholds. Specifically, on cross-examination, when asked whether members of the NYPD are permitted to "apply force to somebody's throat," Kanbur stated that "[i]t's prohibited, but you gotta understand the circumstances also. Every situation is different, okay, but it's a prohibited act, yes." Joint App'x at 1249. Indeed, Kanbur did not attempt to justify the use of a chokehold in this case; rather, he denied ever applying a chokehold against Aponte. Further, in his summation, Aponte's counsel reiterated to the jury that "you know [Kanbur] testified that he understood, based upon his professional training, that applying force to someone's throat is prohibited by the NYPD," and Kanbur's counsel never argued to the contrary. Joint App'x at 1349. Given that the jury heard uncontroverted evidence that NYPD regulations prohibit chokeholds, we conclude that the preclusion of the NYPD Guides, where those regulations are memorialized, did not "affect[] the outcome of the case," *Tesser*, 370 F.3d at 319 (internal quotation marks omitted), because the jury had before it (and was later reminded of) undisputed

6

evidence that the NYPD does not permit its officers to use chokeholds.   Accordingly, assuming—

without deciding—that the district court made an erroneous evidentiary ruling with respect to the

NYPD Guides, such error does not warrant a new trial.   *See Warren*, 823 F.3d at 138.

## II.     Jury Instructions

Finally, Aponte contends that the district court erred by declining to instruct the jury that

the Fourth Amendment generally requires arrests inside a person's home to be conducted pursuant

to an arrest warrant, and by instructing the jury that whether Kanbur and his fellow officers had a

warrant for Aponte's arrest on August 10, 2015 was irrelevant to their assessment of whether

Kanbur ultimately used excessive force.   We find Aponte's argument unpersuasive.

Before the district court, Aponte sought the following jury instruction:   "In general, an

arrest inside a person's home violates the Fourth Amendment to the U.S[.] Constitution if it is not

conducted pursuant to a valid arrest warrant."   Joint App'x at 721.   The district court declined to

give that instruction,[4] and instead instructed the jury that "[a]n arrest warrant is not required every

time an officer makes an arrest.   Whether the police officers had an arrest warrant in this case is

not relevant to your determination on the question of whether Sergeant Kanbur used excessive

force against the plaintiff."[5]   Joint App'x at 1384; *see also* Joint App'x at 1078 (curative

---

[4]   In connection with Kanbur's related request that Aponte be precluded "from suggesting, through argument and questioning, that the warrantless entry into [Aponte's] apartment was improper," Joint App'x at 748, the district court explained its view that the warrant issue "is a side journey that we don't have to take in this trial because there's no false arrest claim, it's simply excessive force.   And whether or not . . . Kanbur had the authority to go into the apartment really doesn't matter because [Aponte's] claim is that when [Kanbur] went into the apartment, he used excessive force against [Aponte].   That's the issue.   So there's no need to go into whether or not the entry was legal. . . . I don't want to get into a long thing about this because it really is not relevant."   Joint App'x at 802.

[5]   Kanbur was promoted to the rank of Sergeant following the events at issue in this case.

7

instruction to the jury during the trial that "[t]here's . . . been reference to a warrant[, which is] not something that's part of the case as far as you are concerned. Not every encounter between the police and civilians requires a warrant[.] . . . [I]t's not a factor that will go into your determination."). Aponte asserts that this was prejudicial error because it "withheld from the jury critical aspects of the legally relevant totality of the circumstances, and was harmful because it prevented the jury from considering that . . . Aponte was not resisting arrest or under a legal obligation to accompany officers to the precinct at the time" Kanbur allegedly used a chokehold against him. Appellant's Br. at 8–9.

As an initial matter, the parties disagree as to the standard of review we should apply with respect to this issue. Specifically, Aponte argues that his challenge to the district court's jury instructions is subject to *de novo*—or, failing that, plain error—review. *See Rasanen v. Doe*, 723 F.3d 325, 331–32 (2d Cir. 2013) ("In general, we review challenges to jury instructions in civil cases *de novo*, and will grant a new trial if we find an error that is not harmless. If, however, the challenging party failed to object to the charge at trial, we review for plain error . . . ." (citation and internal quotation marks omitted)). For his part, Kanbur asserts that, because Aponte failed to object to the jury instructions, his challenge is subject to review for "fundamental error." Appellee's Br. at 49 (citing *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 62 (2d Cir. 2002)); *but see Rasanen*, 723 F.3d at 332 n.2 (stating that, prior to the 2003 amendment to Federal Rule of Civil Procedure 51(d), we employed the more-exacting fundamental error standard to unpreserved challenges to jury instructions, and that, following that amendment, we employ the plain error standard). We need not resolve this dispute, however, because, as set forth below, we conclude

8

that there was no error here.   Thus, this challenge to the district court's jury instructions fails under any standard.

We agree with the district court that the fact that Kanbur and the other officers on the scene had no warrant was irrelevant in this excessive force case.  Of course, in the context of a *false arrest* claim, the existence of a valid arrest warrant supported by probable cause is critical because arrests pursuant to a warrant, which are generally presumed to be reasonable given that warrants cannot be issued absent probable cause, *see Walczyk v. Rio*, 496 F.3d 139, 155–56 (2d Cir. 2007), can serve as a complete defense to such claims, *see Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) ("A finding of probable cause is a complete defense to false arrest claims."). Moreover, it is well settled that a warrantless entry into a home must meet an exception to the warrant requirement, such as exigent circumstances, to comply with the Fourth Amendment.  *See Chamberlain ex rel. Chamberlain v. City of White Plains*, 960 F.3d 100, 105–06 (2d Cir. 2020). However, Aponte brought no false arrest or unlawful entry claim here and, in any event, the inquiry in an excessive force case is different.  In other words, the jury in this case was charged with determining whether Kanbur used force of any kind against Aponte and, if so, whether that force was objectively reasonable under the circumstances, not whether Kanbur had a lawful basis to either enter Aponte's apartment or arrest him.

To the extent Aponte argues that the jury needed to be aware of the lack of an arrest warrant to properly assess the totality of the circumstances surrounding Kanbur's alleged use of excessive force, *see County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1546 (2017) ("The operative question in excessive force cases is whether the totality of the circumstances justifie[s] a particular sort of search or seizure." (alteration in original) (internal quotation marks omitted)), we disagree.   We

9

have made clear that the unlawfulness of an arrest does not make the force used to effectuate that arrest *per se* unreasonable and excessive under the Fourth Amendment. *See Zellner v. Summerlin*, 494 F.3d 344, 377–78 (2d Cir. 2007) (affirming the district court's rejection of plaintiff's argument "that the jury should have been instructed that if it found [plaintiff] had been arrested without probable cause, it must find that any force used by defendants in the course of that arrest was excessive and thus must return a verdict in his favor on the excessive force claim"); *Jones v. Parmley*, 465 F.3d 46, 62 (2d Cir. 2006) (determining, in the qualified immunity context, that the district court misapprehended the law in this Circuit to be that "any force employed by a police officer would be unlawful so long as probable cause did not exist, even if the detainee had threatened the officer with significant harm"); *see also Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004) ("Because the excessive force and false arrest factual inquiries are distinct, establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa."); *cf. Mendez*, 137 S. Ct. at 1547 (suggesting that "it would be going entirely too far to suggest that *any* Fourth Amendment violation that is connected to a reasonable use of force should create a valid excessive force claim").

Aponte suggests that the lawfulness of Kanbur's warrantless entry into his apartment bears on the reasonableness of *his belief* that he was not legally required to go anywhere with the officers who visited his home. However, the reasonableness of the use of force is examined from the objective standpoint of the police officer. Thus, the arrestee's subjective belief regarding the situation (including the alleged need for a warrant) was simply irrelevant to the jury's determination as to whether the force (if any) they concluded Kanbur in fact used against Aponte was excessive under the totality of the circumstances. *See Graham v. Connor*, 490 U.S. 386, 388,

10

396, 399 (1989) (holding that the standard for determining whether excessive force was used in making an arrest is an "objective reasonableness" test, which "must be judged from the perspective of a reasonable officer on the scene" and take into account the totality of the circumstances); *see also Ehlers v. City of Rapid City*, 846 F.3d 1002, 1011 (8th Cir. 2017) ("[A]n arrestee's subjective motive does not bear on how reasonable officers would have interpreted his behavior.").

We do recognize that we have held that, under certain circumstances, "officers' unlawful entry into [a plaintiff's] apartment, if borne out by proven facts, may affect the balancing of factors bearing on whether the officers' use of force was objectively unreasonable under the circumstances." *Chamberlain ex rel. Chamberlain*, 960 F.3d at 114; *see also Mendez*, 137 S. Ct. at 1547 n.1 (declining to address whether "unreasonable police conduct prior to the use of force that foreseeably created the need to use it" is a relevant factor in an excessive force analysis). This case, however, is not such a situation. Aponte alleged that Kanbur entered his apartment and choked him without any provocation. If that occurred, the force would have been excessive regardless of the lawfulness of the entry. For his part, Kanbur denied choking Aponte at all and thus did not attempt to justify the use of such force based upon any circumstances created by his entry into Aponte's apartment. In short, Aponte failed to articulate how the lawfulness of Kanbur's entry into the apartment would have been relevant in this particular case to the jury's resolution of these conflicting versions of events. *See, e.g.*, *Rasanen*, 723 F.3d at 330 ("Whether [the police officers] entered [plaintiff's] home sooner than the warrant allowed has no bearing on whether [defendant] acted unreasonably when he shot [plaintiff].").

Accordingly, we discern no error in the district court's instructions to the jury on the excessive force claim with regard to the irrelevance of the lack of an arrest warrant.

11

\*　　　\*　　　\*

We have considered all of Aponte's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court