# United States Court of Appeals

## For the Eighth Circuit

_____

No. 22-1685

_____

Derek Westwater

*Plaintiff - Appellant*

v.

Kevin Church

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: October 19, 2022
Filed: February 23, 2023

_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.

_____

LOKEN, Circuit Judge.

Derek Westwater fled when Keokuk, Iowa, police officer Zeth Baum stopped him based on an outstanding warrant for fifth-degree theft. Apprehended a few minutes later, Westwater was placed in Captain Kevin Church's squad car. At the nearby police station, Westwater briefly refused to obey Church's command to exit the squad car and proceed to the station for booking. When the handcuffed Westwater finally exited the car and stood up, Church struck him with his fist on the

back of the head and neck. Westwater brought this action for excessive force under 42 U.S.C. § 1983 and asserted pendent Iowa state law claims for tortious assault and battery. The district court granted summary judgment dismissing both claims on the ground that the force used was objectively reasonable. Alternatively, the court ruled that Church was entitled to qualified immunity on the federal § 1983 claim because any constitutional violation was not clearly established. Westwater appeals. Reviewing the grant of summary judgment *de novo*, we conclude that genuine issues of disputed facts preclude a determination, on this summary judgment record, of whether the alleged unlawful use of excessive force was objectively reasonable and, if not, whether the violation was clearly established at the time of the incident in question. Accordingly, we reverse the dismissal of all claims, including Westwater's pendent state law claims.

## I. Background

Officer Baum stopped Westwater, driving a motorcycle, on May 1, 2018. Westwater approached Baum, refusing Baum's directions to stay by the motorcycle and keep his hands raised. When Baum drew his taser, Westwater fled into nearby woods, running three or four blocks. Officers Steve Dray and Andrew Whitaker apprehended Westwater when he exited the woods, handcuffed him, and placed him in the back of Captain Church's squad car on the passenger side. In 2015, Westwater had pleaded guilty to assaulting Officer Hymes, punching him multiple times in the face and head in an altercation. Church, normally on duty with Hymes, was not present but knew of the prior assault.

Church drove Westwater to the police station. During the drive, Westwater claims he only asked Church to roll down the window, and Church replied it was broken. Church claims Westwater threatened "to beat [Church's] mother f*****g ass as he beat Officer Hymes' ass." Upon arriving at the police station, Church opened the squad car door next to Westwater and told him to exit. Westwater instead sat in

the car for 30-45 seconds. Westwater, recently released after serving a prison sentence, says he sat in resignation, processing the fact that he was going back to jail.

Church repeated his order to exit. According to Church, Westwater told Church to "get the F away from me" before starting to get out of the vehicle. Telling Church to "not f***ing touch me," Westwater stood up, hunched over with both feet on the ground. Church testified he believed Westwater was looking for a way to "create just enough distance to where he could run." Church further testified that, when he came closer, Westwater "lunged back" and said "I'm going to f***ing head-butt you." Church then "grabbed a hold of [Westwater's] head" with both hands and pulled them together. Westwater yelled "I'm going to f*** you up." Church testified that he took two swings (not with full force) at the back of Westwater's neck with his fist, making contact once.

Westwater told a different story. After Church repeated his order to get out of the squad car, Westwater announced "I can walk," and started to exit the vehicle. Though claiming the incident was "a blur" he can't fully remember, he testified that shortly after exiting the squad car Church struck him in the back of the head with his fist at least five times, while Westwater tried to escape back into the squad car. Westwater testified that he never threatened to head-butt Church, that he had to bend his body and lower his head to exit the squad car handcuffed, and that there was no way he could have run, being blocked by Church and the squad car on all sides.

A security camera recorded the scene before and after the use of force but failed to capture the physical struggle. Church immediately called for assistance. Two nearby firefighters heard the commotion and came to assist Church, the only police officer present. Other officers came from the police station and brought Westwater in for booking. He later pleaded guilty to criminal harassment for threats made against Church after being placed in a holding cell.

Westwater initially asserted various state and federal claims against Church and other officials. The district court dismissed all claims except his § 1983 excessive force and Iowa assault and battery claims against Church. Church moved for summary judgment, arguing the force used was objectively reasonable and he is entitled to qualified immunity. The district court granted the motion. Construing the facts favorably for Westwater, the non-moving party, the court held that the force used was reasonable because Church could reasonably view Westwater as a threat, based on his prior assault of Officer Hymes, and a flight risk, based on his earlier attempt to escape from Officer Baum. After Westwater's initial refusal to exit the car, Church could reasonably interpret Westwater's motions as preparing to assault Church with a head-butt. The court also held that a reasonable official in Church's shoes would not have believed that the excessive force alleged by Westwater "under the above-described circumstances" violated his clearly established rights.

## II. Discussion

Qualified immunity shields police officers from liability for civil damages when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." White v. Pauly, 580 U.S. 78-79 (2017) (per curiam) (quotation omitted). To survive summary judgment dismissing his § 1983 claim, Westwater must proffer facts showing that (1) a statutory or constitutional right was violated; and (2) the right was "clearly established." Hansen v. Black, 872 F.3d 554, 557-58 (8th Cir. 2017).

**A. Reasonable Force.** The Fourth Amendment includes the right "to be secure . . . against unreasonable . . . seizures." Citizen claims that a police officer "used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person . . . are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Graham v. Connor, 490 U.S. 386, 388 (1989). Though Westwater was already detained when the alleged excessive force was used in this

case, the objective reasonableness standard applies to his claim.  Cf. Kingsley v. Hendrickson, 576 U.S. 389 (2015).

"[D]etermining whether the force used to effect a particular seizure is 'reasonable' requires balancing of the individual's Fourth Amendment interests against the relevant governmental interests."  County of L.A. v. Mendez, 581 U.S. 420, 427 (2017) (quotation omitted).  The inquiry is based on the totality of the relevant circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham, 490 U.S. at 396.  We analyze these factors from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id.

As the district court recognized, when the issue of unreasonable force is raised in a motion for summary judgment, a court must construe the facts in favor of Westwater, the non-moving party.  Frederick v. Motsinger, 873 F.3d 641, 644 (8th Cir. 2017).  Thus, when "opposing parties tell two different stories," the court must view material disputed facts "in a light most favorable to the non-moving party -- as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them."  Reed v. City of St. Charles, 561 F.3d 788, 790 (8th Cir. 2009), quoting Scott v. Harris, 550 U.S. 372, 380 (2007).  Here, there is conflicting testimony as to the amount of force used and whether Westwater posed an immediate threat to Church or a risk of flight.  The security camera did not capture the use of force, and the conversation in the squad car was not recorded.  Therefore, Westwater's version of the incident is not "blatantly contradicted by the record," and a reasonable fact-finder could find it credible after trial.[1]

_____

[1]It is worth noting again, because many of our cases have obscured the point by referring to what a reasonable jury could find, that the question whether force used was objectively reasonable or constitutionally excessive is a question of law, at the summary judgment stage *and* after trial.  See Brossart v. Janke, 859 F.3d 616, 624 (8th Cir. 2017); Davis v. White, 794 F.3d 1008, 1013 (8th Cir. 2015).

Westwater argues Church used objectively unreasonable force when he struck Westwater in the back of the head "at least five times." Church testified he swung twice and struck Westwater only once. He argues that the force used was *de minimis* and therefore objectively reasonable. Our cases distinguish between *de minimis* force, which is not actionable under the Fourth Amendment, and *de minimis* injury, which is actionable unless it establishes *de minimis* use of force. See Chambers v. Pennycook, 641 F.3d 898, 906 (8th Cir. 2011). Five strikes to the back of the head with a closed fist is more force than other situations where we have rejected the defense of *de minimis* force, and Westwater presented evidence of more than *de minimis* injury. See Montoya v. City of Flandreau, 669 F.3d 867, 871 (8th Cir. 2012) (sweeping a leg to trip someone). We agree with the district court that Church did not warrant summary judgment on this ground.

The critical factor in this excessive force case, as in most others, is whether Westwater, a handcuffed detainee, posed a realistic threat to the safety of Church or a risk of flight that justified the degree of force used. "The use of force is least justified against a nonviolent misdemeanant who does not flee or actively resist arrest and poses little threat to officers or the public." Kohorst v. Smith, 968 F.3d 871, 876 (8th Cir. 2020). Westwater denied threatening Church in the brief ride to the police station. Though he delayed obeying Church's order to exit the car, he denied threatening to head-butt Church as he exited, explaining that he had to bend over to exit the car while handcuffed. Westwater testified it was not physically possible for him to flee past Church when he exited the squad car. See McDaniel v. Neal, 44 F.4th 1085, 1090 (8th Cir. 2022) (severe force unjustified where arrestee could no longer escape). Westwater claims that at the time Church struck him he was fully compliant and nonviolent.

On the other hand, Church testified that Westwater made repeated threats to Church's safety during the ride to the police station, including a specific reference to Westwater's prior assault of Church's colleague, Hymes. Westwater threatened to head-butt Church as he exited the squad car and then moved his head as if preparing

to do so. Church also knew Westwater had just been arrested after fleeing from Officer Baum, which supported his concern about Westwater fleeing again rather than proceeding to the police station to be jailed.

This is a close case on a question of law -- whether, on this summary judgment record, the force used by Church was objectively reasonable, as the district court concluded. If a reasonable fact-finder were to credit Church's testimony, the answer would be clear. Westwater was not fully compliant when Church used the force at issue. See Hosea v. City of St. Paul, 867 F.3d 949, 958-59 (8th Cir. 2017). He had repeatedly threatened Church's safety and was capable of carrying out that threat as he exited the squad car. And he posed at least some risk of flight. Prior knowledge of violent behavior, particularly towards law enforcement officers, is a relevant factor in deciding whether to use force. See Wenzel v. City of Bourbon, 899 F.3d 598, 602 (8th Cir. 2018). And Westwater's testimony does not clearly refute Church's version of the split-second incident; his recall of the critical time period, which was not recorded by the security camera, was "a blur."

But we may not simply credit Church's testimony at the summary judgment stage. Westwater's contrary testimony, though a "blur" to some extent, would if credited by a reasonable fact-finder (i) eliminate the alleged oral threats to Church's safety, (ii) innocently explain Westwater's head movements in exiting the squad car, and (iii) discredit Church's concern there was a risk of flight, perhaps creating an inference that Church used force to retaliate for Westwater's prior assault of Officer Hymes. Therefore, on this summary judgment record, we decline to affirm the district court's reasonable-use-of-force conclusion and turn to the second prong of the qualified immunity inquiry, whether it was clearly established on May 1, 2018, that the force Church used was constitutionally excessive.

**B. Clearly Established.** Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly

violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991). Our standard for applying this principle is well established:

> For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. A plaintiff must identify either controlling authority or a robust consensus of cases of persuasive authority that placed the statutory or constitutional question beyond debate at the time of the alleged violation.

Kelsay v. Ernst, 933 F.3d 975, 979 (8th Cir. 2019) (en banc) (citations omitted). When the Fourth Amendment issue is the use of excessive force, the Supreme Court has made it clear that specificity is required. "[P]olice officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." Kisela v. Hughes, 138 S. Ct. 1148, 1153 (2018) (quotation omitted). Westwater must "identify a case that put [Church] on notice that his specific conduct was unlawful." Rivas-Villegas v. Cortesluna, 142 S. Ct. 4, 8 (2021).

In deciding this issue, the district court must "view the evidence at summary judgment in the light most favorable to [Westwater] with respect to the central facts of this case." Tolan v. Cotton, 572 U.S. 650, 657 (2014). As our sharply divided en banc decision in Kelsay illustrates, controlling Supreme Court and Eighth Circuit precedents prior to May 2018 drew fine lines in determining when police officers' use of non-deadly force was objectively reasonable in making an arrest or other seizure. Our cases clearly established that it was objectively unreasonable to use more than *de minimis* force to seize a non-threatening misdemeanant who was not fleeing, resisting arrest, or ignoring officer commands. See Kelsay, 933 F.3d at 985 (Smith, C.J., dissenting), and pre-2018 cases cited; Blazek v. City of Iowa City, 761 F.3d 920 (8th Cir. 2014).

Blazek did not involve the use of force against a person who the officer knew had committed a prior violent assault against another officer and had attempted to

-8-

escape from a third officer just minutes earlier.  And, when they arrived at the police station, Westwater refused to comply with Church's order to exit the squad car, a display of passive resistance that justified use of *some* force to pull Westwater from the car and take him into the station.  See Wertish v. Krueger, 433 F.3d 1062, 1066 (8th Cir. 2006). Nor was the degree of force Church allegedly used clearly excessive in light of our prior excessive force decisions.  Cf. Murphy v. Engelhart, 933 F.3d 1027, 1028-29 (8th Cir. 2019); Wertish, 433 F.3d at 1065.  Church is entitled to qualified immunity if the facts establish that his action "falls within the zone described as the 'sometimes hazy border between excessive and acceptable force.'" Shelton v. Stevens, 964 F.3d 747, 753 (8th Cir. 2020), quoting Saucier v. Katz, 533 U.S. 194, 206 (2001).  Our decision in Kelsay makes clear that, in excessive force cases, the clearly established inquiry requires careful scrutiny of the particular conduct and circumstances at issue.  933 F.3d at 980-82.

Though the ultimate clearly established issue is a question of law, the district court in ruling on Church's motion for summary judgment viewed the facts in the light most favorable to Westwater, and "we ordinarily lack jurisdiction to decide 'which facts a party may, or may not, be able to prove at trial.'"  Id. at 979, quoting Johnson v. Jones, 515 U.S. 304, 313 (1995).  As previously explained, the facts viewed most favorably to Westwater -- primarily his deposition testimony -- would establish that Westwater did not threaten Church as they drove to the police station, did not threaten to head-butt Church as Westwater voluntarily exited the squad car after passively resisting a command to exit for 30 to 45 seconds, and could not flee. If credited by a reasonable factfinder, our pre-2018 excessive force cases establish that Church is not entitled to qualified immunity because Westwater was a non-threatening misdemeanant who was not fleeing, resisting arrest, or significantly ignoring officer commands.  In these circumstances, summary judgment should not be granted on either qualified immunity issue, whether the force used was reasonable and, if not, whether the violation was clearly established. Though qualified immunity should be determined prior to trial when feasible, the issues of law in this case cannot be determined without findings on these central fact issues.

**C. State Law Claims.** This leaves Westwater's remaining state law claims of tortuous assault and battery. Iowa law justifies police force where "the peace officer reasonably believes [such force] to be necessary to effect the arrest or to defend any person from bodily harm." Iowa Code § 804.8. Iowa courts apply an objective reasonableness standard. <u>Parrish v. Dingman</u>, 912 F.3d 464, 469 (8th Cir. 2019). As Church more or less concedes, because we have declined to affirm the district court's grant of summary judgment dismissing Westwater's § 1983 federal claims, we must reverse the district court's dismissal of Westwater's state law claims and remand to the district court for further consideration of this issue under Iowa law.

The judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

_____