# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-2329
_____

Amir Brandy

*Plaintiff - Appellee*

v.

City of St. Louis, Missouri

*Defendant - Appellant*

John Hayden, COL, in his individual and official capacities

*Defendant*

William Olsten, Officer, in his individual and official capacities

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri

_____

Submitted: January 10, 2023
Filed: July 28, 2023

_____

Before GRASZ, MELLOY, and KOBES, Circuit Judges.

_____

GRASZ, Circuit Judge.

Officer William Olsten deployed pepper spray on Amir Brandy and others during a protest in downtown St. Louis. Brandy sued Officer Olsten, Chief of Police John Hayden, and the City of St. Louis (collectively, "City Officials") alleging various federal and Missouri law claims, including First Amendment retaliation. The defendants moved for summary judgment on all claims. The district court granted summary judgment to the City Officials on some of the claims. As relevant to this interlocutory appeal, however, the district court concluded that neither the City nor Officer Olsten were entitled to summary judgment on Brandy's First Amendment retaliation claim and therefore denied the motion in part. The district court also reserved ruling on the City Officials' motion for summary judgment on two state law claims. We affirm in part and remand for the district court to resolve the motion on the state law claims.

## I. Background

The district court found the following facts to be undisputed. On September 15, 2017, former St. Louis police officer Jason Stockley was acquitted of first-degree murder charges. There were protests held around St. Louis for the next month with some becoming violent at times. During a protest on September 29 in downtown St. Louis, an altercation occurred between officers and protestors, which led to an officer deploying his taser and arresting two protestors. Officer Olsten and other officers led an arrested protestor away from the scene. Other protestors began shouting at and following the officers. Officer Olsten gave the crowd at least two orders to "get back." Brandy, who was in the crowd of protestors following Officer Olsten, saw a pepper spray fogger in Officer Olsten's hand and yelled: "If you put that s*** in my face, I'll f*** you up." Officer Olsten stepped toward Brandy and responded: "Come f*** me up then." Two other officers then placed their hands on Officer Olsten in order to assist him in moving away.

Brandy and the crowd of protestors stopped following the officers and Officer Olsten transferred the arrested protestor to other law enforcement. However, Officer Olsten and Brandy were soon standing face-to-face only a few feet apart. Brandy

said: "Put that s*** in my face." Officer Olsten retorted: "Dude, back up." Brandy then called Officer Olsten a "p**** a** white boy." Another protestor, Rasheen Aldridge, inquired about who tased the arrested protestor and Officer Olsten responded: "I didn't tase him." After this interaction, an unidentified female protestor in the crowd shouted something. The appellants argue the protestor shouted, "Shoot this motherf***er" or "shoot this motherf***er back." While the appellee contends the protestor yelled: "Shut this motherf***er down." Immediately after this unidentified protestor shouted, Officer Olsten deployed his pepper spray, hitting Brandy, who was directly in front of him, and others in the crowd. Officer Olsten continued to spray for several seconds as he walked toward the crowd of protestors. None of the protestors who were impacted by the pepper spray, including Brandy, were arrested.

The district court determined Officer Olsten was not entitled to summary judgment on the First Amendment retaliation claim based on qualified immunity or the state law claims based on official immunity. The district court reserved ruling on the City's sovereign-immunity-based motion for summary judgment founded on two state law claims. The City Officials appealed the summary judgment order.

## II. Analysis

"Ordinarily, we lack jurisdiction 'to hear an immediate appeal from a district court's order denying summary judgment, because such an order is not a final decision.'" *Langford v. Norris*, 614 F.3d 445, 455 (8th Cir. 2010) (quoting *Krout v. Goemmer*, 583 F.3d 557, 563–64 (8th Cir. 2009)). However, we do have limited jurisdiction under the collateral order doctrine to hear an interlocutory appeal of a denial of qualified immunity. *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008 (8th Cir. 2017). Our jurisdiction "extends only to abstract issues of law, not to determinations that the evidence is sufficient to permit a particular finding of fact after trial." *Shannon v. Koehler*, 616 F.3d 855, 861 (8th Cir. 2010) (cleaned up) (quoting *Krout*, 583 F.3d at 564). "Although this court cannot find facts, it may determine whether the undisputed facts support the district court's legal

conclusions." *Kong ex rel. Map Kong v. City of Burnsville*, 960 F.3d 985, 991 (8th Cir. 2020). "This court views disputed facts most favorably to the plaintiff, including all reasonable inferences." *Id.* Therefore, we can review "whether the uncontested evidence demonstrates that the defendants violated a clearly established constitutional right" because this is "a legal issue falling squarely within our limited interlocutory appellate jurisdiction." *Solomon v. Petray*, 795 F.3d 777, 785 (8th Cir. 2015) (quoting *Brown v. Fortner*, 518 F.3d 552, 557 (8th Cir. 2008)).

## A. Qualified Immunity

We review de novo a district court's denial of a motion for summary judgment on the basis of qualified immunity. *Shannon*, 616 F.3d at 861–62. "To defeat qualified immunity, [Brandy] must prove that: '(1) the facts, viewed in the light most favorable to [him], demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'" *Pollreis v. Marzolf*, 9 F.4th 737, 743 (8th Cir. 2021) (quoting *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)). "For a right to be clearly established, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Kelsay v. Ernst*, 933 F.3d 975, 979 (8th Cir. 2019) (en banc) (cleaned up) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A "case directly on point" is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The appellants argue the district court made three errors in denying Officer Olsten qualified immunity. They maintain the district court should have concluded: (1) Brandy's purported First Amendment right was not clearly established at the time of the alleged violation; (2) there was no First Amendment violation because Brandy was not engaged in First Amendment protected expression; and (3) there was no First Amendment violation because Officer Olsten's use of pepper spray was not motivated, even in part, by Brandy's protected expression.

The district court reasoned that "[a]n individual's right to exercise First Amendment rights without facing retaliation from government officials was clearly established . . . " at the time of the protest in 2017. But the appellants contend the district court failed to "address the crucial question of whether it was clearly established that deploying pepper spray at a crowd of hostile, belligerent, combative protestors who threatened officers with violence and refused their lawful commands was a violation of a person's First Amendment rights."

While the appellants are correct that "'clearly established law' should not be defined at a high level of generality[,]" *White v. Pauly*, 580 U.S. 73, 79 (2017), "[a]n exact match . . . is not required if the constitutional issue is 'beyond debate.'" *Quraishi v. St. Charles Cnty.*, 986 F.3d 831, 838 (8th Cir. 2021) (quoting *Ashcroft*, 563 U.S. at 741). "A general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Winslow v. Smith*, 696 F.3d 716, 738 (8th Cir. 2012) (quoting *Shekleton v. Eichenberger*, 677 F.3d 361, 367 (8th Cir. 2012)). In other words, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

According to the Supreme Court, "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). We have similarly confirmed that this right is clearly established in *Thurairajah v. City of Fort Smith*, 925 F.3d 979, 985 (8th Cir. 2019) and *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010). This "general constitutional rule" would apply with "obvious clarity to the specific conduct in question." *See Winslow*, 696 F.3d at 738 (quoting *Shekleton*, 677 F.3d at 367). Because an officer in Officer Olsten's position would have been on notice that he could not use his pepper spray as a means to retaliate against a citizen for his or her protected expression, we agree with the district court that Brandy's right to exercise

his First Amendment rights without facing retaliation from government officials is clearly established.

But just because the law is clearly established does not mean there was a constitutional violation. Brandy must also show that the facts, viewed in the most favorable light, demonstrate the three elements of his First Amendment retaliation claim: (1) he engaged in protected expression; (2) Officer Olsten took an adverse action that would chill a person of ordinary firmness from continuing the activity; and (3) there was a but-for causal connection between Officer Olsten's retaliatory animus and Brandy's injury. *See Quraishi*, 986 F.3d at 837 (setting forth the elements generally); *Laney v. City of St. Louis*, 56 F.4th 1153, 1157 (8th Cir. 2023) (holding but-for causation is required to satisfy the third element). Officer Olsten argues Brandy cannot meet the first element of having engaged in protected expression. While "[c]riticism of public officials and the administration of governmental policies 'lies at the heart of speech protected by the First Amendment,'" *Rinne v. Camden Cnty.*, 65 F.4th 378, 383 (8th Cir. 2023) (quoting *Williams v. City of Carl Junction*, 480 F.3d 871, 874 (8th Cir. 2007)), the appellants argue Brandy's speech was unprotected because his speech constituted a "true threat." "True threats of violence . . . lie outside the bounds of the First Amendment's protection." *Counterman v. Colorado*, ___ S. Ct. ___, No. 22-138, at *3 (U.S. June 27, 2023).

"[A] true threat is a statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm or cause injury to another." *Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616, 624 (8th Cir. 2002) (en banc). A non-exhaustive list of factors to consider includes: (1) "the reaction of those who heard the alleged threat"; (2) "whether the threat was conditional"; (3) "whether the person who made the alleged threat communicated it directly to the object of the threat"; (4) "whether the speaker had a history of making threats against the person purportedly threatened"; and (5) "whether the recipient had a reason to believe that the speaker had a propensity to engage in violence." *Id.* at 623.

-6-

Therefore, the first critical question is this: viewing the evidence in the light most favorable to Brandy, was his speech at the protest protected expression or did it constitute a true threat? If his speech was a true threat and consequently unprotected, there was no constitutional violation, and Officer Olsten is entitled to qualified immunity and thus summary judgment. In the absence of unusual facts though, the question whether a statement amounts to a true threat is a question generally left to a jury. *Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic*, 582 F.3d 1155, 1166 (10th Cir. 2009) (First Amendment retaliation case); *see also United States v. Dillard*, 795 F.3d 1191, 1199 (10th Cir. 2015) (criminal case); *Melugin v. Hames*, 38 F.3d 1478, 1485 (9th Cir. 1994) (criminal case). The district court held there was a genuine factual dispute about whether Brandy's taunts "crossed into unprotected territory," which prevented it from entering summary judgment on this issue.

We previously "emphasized the fact intensive nature of the true threat inquiry and held that a court must view the relevant facts to determine 'whether the recipient of the alleged threat could reasonably conclude that it expresses a determination or intent to injure presently or in the future.'" *Doe*, 306 F.3d at 622 (quotation marks omitted) (quoting *United States v. Dinwiddie*, 76 F.3d 913, 925 (8th Cir. 1996)). "[W]e do not have jurisdiction to decide whether or not we disagree with the district court as to whether there was sufficient evidence to find a genuine issue of material fact for resolution at trial." *Thompson v. Dill*, 930 F.3d 1008, 1014 (8th Cir. 2019). Because Officer Olsten cannot demonstrate that "the record plainly forecloses the district court's finding of a material factual dispute," *Mallak v. City of Baxter*, 823 F.3d 441, 446 (8th Cir. 2016), we have no jurisdiction to disturb the district court's conclusion that this is a genuine dispute of material fact.

Finally, Officer Olsten argues there was no First Amendment violation because his use of pepper spray was not motivated, even in part, by Brandy's purportedly protected expression. *See Mitchell v. Kirchmeier*, 28 F.4th 888, 896 (8th Cir. 2022) (explaining that in order to prevail the plaintiff must show "the defendant would not have taken the adverse action but for harboring 'retaliatory animus'

against the plaintiff because of his exercise of his First Amendment rights") (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)). "The causal connection is generally a jury question . . . [unless] the question is so free from doubt as to justify taking it from the jury." *Peterson v. Kopp*, 754 F.3d 594, 603 (8th Cir. 2014) (ellipses and brackets in original) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)), *abrogated on other grounds by Laney*, 56 F.4th at 1157 n.2. "Generally, 'more than a temporal connection is required to present a genuine factual issue on retaliation.'" *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011) (quoting *Peterson v. Scott Cnty.*, 406 F.3d 515, 524 (8th Cir. 2005)). Here, the district court again held that "a fact question remains as to whether Officer Olsten's deployment of pepper spray was motivated, even in part, by Plaintiff's engagement in a protected activity, or instead was prompted by Plaintiff's potentially unprotected activity or another cause altogether."

The appellants argue this case is analogous to the consolidated cases in *Aldridge v. City of St. Louis*, which arose out of the same incident. Aldridge, Franks, and Brown were three other protestors in the same crowd as Brandy, and we affirmed the grant of summary judgment to Officer Olsten based on qualified immunity. Officer Olsten argued that the unidentified woman in the crowd screaming, what he thought was, "shoot these motherf***ers," precipitated his decision to deploy the pepper spray. But there was nothing in the record that would have caused Officer Olsten to single Aldridge, Franks, or Brown out of the crowd of protestors for an adverse action. Conversely, Brandy was openly verbally antagonistic to Officer Olsten by saying: "If you put that s*** in my face, I'll f*** you up" and referring to him as a "p**** a** white boy." Brandy also elicited a hostile response from Officer Olsten, who turned back to Brandy and responded: "Come f*** me up then." In fact, two officers even placed their hands on Officer Olsten to keep him moving away from Brandy and the other protestors.

This interaction indicates Officer Olsten might have singled out Brandy for the adverse action. Alternatively, Officer Olsten could have deployed his pepper spray due to the increasingly aggressive crowd. In other words, Officer Olsten's

motive was not "so free from doubt as to justify taking [the issue of causation] from the jury." *Quraishi*, 986 F.3d at 838 (quoting *Revels*, 382 F.3d at 876). Because the record does not plainly foreclose the district court's finding of a factual dispute as to causation, "resolution of whether the evidence is sufficient to make that dispute 'genuine' is beyond our limited jurisdiction." *Thompson*, 930 F.3d at 1015.

## B. Official Immunity

The appellants next argue that Brandy's state law claims should be barred by official immunity. We have "limited jurisdiction to review issues of law related to the district court's denial of summary judgment based on [Officer Olsten's] official immunity defense." *Thompson*, 930 F.3d at 1013. "We review the district court's denial of summary judgment based on official immunity de novo." *Torres v. City of St. Louis*, 39 F.4th 494, 507 (8th Cir. 2022).

"Under Missouri law, the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary acts or omissions, but not from liability in claims arising from their performance of ministerial acts." *Reasonover v. St. Louis Cnty.*, 447 F.3d 569, 585 (8th Cir. 2006). "However, official immunity is a qualified immunity and does not apply to those discretionary acts done in bad faith or with malice." *Id.* (quoting *Davis v. Bd. of Educ. of City of St. Louis*, 963 S.W.2d 679, 688 (Mo. Ct. App. 1998)). "The use of force is a discretionary duty." *Wealot v. Brooks*, 865 F.3d 1119, 1129 (8th Cir. 2017). A finding of bad faith "embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, [or] breach of a known duty through some ulterior motive." *Id.* (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. 1986) (en banc)). "[T]o act with malice the officer must do that which a man of reasonable intelligence would know to be contrary to his duty and intend such action to be injurious to another." *Thompson*, 930 F.3d at 1015 (cleaned up) (quoting *Conway v. St. Louis Cnty.*, 254 S.W.3d 159, 165 (Mo. Ct. App. 2008)).

The appellants argue the district court committed reversible error when it denied summary judgment based on official immunity after holding Brandy stated "facts from which it could be found that Officer Olsten acted in bad faith or with malice when he applied pepper spray against" Brandy. According to Officer Olsten, no reasonable jury could find Officer Olsten's actions were motivated by bad faith. "Under our limited review, we do not have jurisdiction to reverse the district court's determination that there were open fact questions as to whether [Officer Olsten] acted maliciously." *Thompson*, 930 F.3d at 1015. Based on Brandy's interaction with Officer Olsten and taking the facts in the light most favorable to Brandy, "a jury could find that [Officer Olsten] acted with the prohibited . . . malice" if he deployed the pepper spray with the ulterior motive of retaliation. *Div. of Emp. Sec., Mo. v. Bd. of Police Comm'rs*, 864 F.3d 974, 980 (8th Cir. 2017). Or a jury may determine that Officer Olsten's actions upheld his duty, but we have no basis to decide that factual question on an interlocutory appeal.

## C. Sovereign Immunity

Finally, the City maintains that the district court's order denying summary judgment on the state claims against the City should be reversed as it is entitled to sovereign immunity. However, the district court did not rule on the City's motion for summary judgment and instead "reserved ruling . . . until after the trial concludes." "Missouri's sovereign immunity statute . . . 'specifically refers to the immunity of a public entity from liability and suit.'" *Torres*, 39 F.4th at 502 (cleaned up) (quoting *Argonaut Great Cent. Ins. Co. v. Audrain Cnty. Joint Commc'ns*, 781 F.3d 925, 930 (8th Cir. 2015)). Just as government officials "are entitled to a thorough determination of their claims of qualified immunity if that immunity is to mean anything at all[,]" *Payne v. Britten*, 749 F.3d 697, 701 (8th Cir. 2014) (cleaned up) (quoting *O'Neil v. City of Iowa City, Iowa*, 496 F.3d 915, 918 (8th Cir. 2007)), the City is entitled to a thorough determination of its claims of sovereign immunity. Thus, we remand with instructions for the district court to reach the merits of the sovereign immunity issue as to the state law claims.

-10-

## III. Conclusion

The district court's denials of summary judgment based on qualified immunity and official immunity are affirmed.  We remand with instructions for the district court to reach the merits of the sovereign immunity issue on the state law claims.

_____