# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-2236
_____

James W. Setchfield

*Plaintiff - Appellee*

v.

St. Charles County

*Defendant*

Scott Ronald, P.O. - DSN 676; Nicholas Seiverling, P.O. - DSN 677

*Defendants - Appellants*

John Williams

*Defendant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: June 11, 2024
Filed: July 31, 2024

_____

Before COLLOTON, Chief Judge, ARNOLD and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Sixty-eight-year-old plaintiff James Setchfield filed a lawsuit against St. Charles County Police Department ("SCCPD") Officer Nicholas Seiverling and Corporal Scott Ronald after the officers allegedly beat him in the parking lot of an Outback Steakhouse. Officer Seiverling and Corporal Ronald filed a motion for summary judgment based on qualified immunity, which the district court[1] denied. The officers filed this interlocutory appeal. We affirm.

**I.**

Though the parties dispute many of the facts of this case, they do agree on how the incident in question began. On August 18, 2020, Officer Seiverling and Corporal Ronald arrested Setchfield's son in the parking lot of an Outback Steakhouse for driving under the influence. Instead of taking him to the station, the officers told Setchfield's son that he could call someone to pick him up. So he called his father. When Setchfield arrived, his son was sitting in the back of a patrol car.

What happened next is disputed, so we view the evidence in the light most favorable to Setchfield and draw all reasonable inferences in his favor. *See Shannon v. Koehler*, 616 F.3d 855, 862-63 (8th Cir. 2010). When Setchfield arrived, he did not know where his son was or why he had been arrested. So Setchfield pulled up next to a police car, rolled down his window, and asked Corporal Ronald where his son was and why he had been arrested. Corporal Ronald responded curtly that it was none of Setchfield's business. Setchfield asked a second time, and Corporal Ronald responded again: "It's none of your fucking business." Their exchange became heated. Both men were shouting. Setchfield called Corporal Ronald a "prick" and a "jerk," though he remained seated in his car the entire time and did not threaten Corporal Ronald or anyone else.

---

[1]The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri.

At some point during this unpleasant conversation, Corporal Ronald approached Setchfield and asked him if he had a gun. While Setchfield was speaking with Corporal Ronald, Officer Seiverling rushed in, "shouting in a manner [Setchfield] could not hear nor understand." When Officer Seiverling reached Setchfield's car, he reached in through his rolled-down window. Startled, Setchfield moved his left arm in a "protective" manner, and Officer Seiverling began punching Setchfield. Both officers hit him while he was still seated with his seatbelt buckled. He was hit in the face, stomach, shoulder, and crotch.

The officers never asked Setchfield to get out of the car. Instead, they pulled him out by his arm. Corporal Ronald placed Setchfield in a "wristlock" while doing so. Officer Seiverling then swept Setchfield's legs out from under him, causing Setchfield to fall face first onto the asphalt. Setchfield was handcuffed and placed under arrest. At no point did Setchfield possess a weapon, try to get out of his vehicle, take off his seat belt, try to flee, or threaten Corporal Ronald or Officer Seiverling with any sort of physical violence.

Emergency medical technicians responded to the scene. Setchfield required assistance walking to the ambulance, and he was taken to the hospital. Setchfield suffered various lacerations, abrasions, bruising, and injuries to his shoulder, wrist, and knee. Setchfield was subsequently diagnosed with post-traumatic stress disorder and now fears law enforcement.

Setchfield filed suit against St. Charles County, Corporal Ronald, Officer Seiverling, and another SCCPD officer, John Williams. The district court dismissed the claims against St. Charles County, as well as Setchfield's negligence claim and his official-capacity claims against the three officers. Invoking qualified immunity, Corporal Ronald and Officers Seiverling and Williams then moved for summary judgment on the remaining claims. The district court granted summary judgment to Officer Williams on the remaining claims against him and also granted summary judgment to Corporal Ronald and Officer Seiverling on one of Setchfield's claims against them. However, the court denied summary judgment to Corporal Ronald and Officer Seiverling on Setchfield's excessive force and unlawful arrest claims, as

well as related state-law claims. Corporal Ronald and Officer Seiverling now appeal the denial of summary judgment and qualified immunity as to the excessive-force and unlawful-arrest claims.

## II.

"Ordinarily, we lack jurisdiction to hear an immediate appeal from a district court's order denying summary judgment, because such an order is not a final decision." *Langford v. Norris*, 614 F.3d 445, 455 (8th Cir. 2010) (internal quotation marks omitted). "We do have limited authority, however, to review the denial of qualified immunity through an interlocutory appeal under the collateral order doctrine." *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009). Our jurisdiction "extends only to abstract issues of law, not to determinations that the evidence is sufficient to permit a particular finding of fact after trial." *Id.* (citation and internal quotation marks omitted). "Thus, a defendant entitled to invoke a qualified immunity defense may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a genuine issue of fact for trial." *Langford*, 614 F.3d at 455 (internal quotation marks omitted).

We review the denial of summary judgment based on qualified immunity *de novo*. *See Brandy v. City of St. Louis*, 75 F.4th 908, 913 (8th Cir. 2023). In conducting our review, we construe the record in the light most favorable to the nonmoving party, *id.*, "accept[ing] as true the facts that the district court found were adequately supported, as well as the facts that the district court likely assumed, to the extent they are not blatantly contradicted by the record," *Graham v. St. Louis Metro. Police Dep't*, 933 F.3d 1007, 1008 (8th Cir. 2019) (internal quotation marks omitted). "Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *MacKintrush v. Pulaski Cnty. Sheriff's Dep't*, 987 F.3d 767, 769 (8th Cir. 2021); *see* Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might

-4-

affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In § 1983 actions, government officials are entitled to summary judgment if they are entitled to qualified immunity. "[Q]ualified immunity shields government officials from liability and the burdens of litigation unless their conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known." *Carpenter v. Gage*, 686 F.3d 644, 648 (8th Cir. 2012). "To defeat qualified immunity, [the plaintiff] must prove that: (1) the facts, viewed in the light most favorable to him, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Brandy*, 75 F.4th at 913 (internal quotation marks omitted). "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (internal quotation marks omitted). A "case directly on point" is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The district court denied qualified immunity to Officer Seiverling and Corporal Ronald because material factual disputes remained in the case and, on the undisputed facts, the officers are not entitled to qualified immunity. The officers argue on appeal that this was error because (1) the district court should not have adopted Setchfield's version of the facts in the first place since Setchfield "present[ed] nothing in the record to support his version of the facts other than his own contradictory testimony" and (2) even accepting Setchfield's version of events, they are still entitled to qualified immunity.

A.

First, we consider whether the district court erred by adopting Setchfield's version of the facts. The Supreme Court has directed that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550

-5-

U.S. 372, 380 (2007). Such blatant contradictions arise, for example, when video footage directly contradicts a party's testimony. *See, e.g.*, *Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010) ("Because the videotape clearly contradicts the version of the story told by Wallingford, we must view the facts in the light depicted by the videotape." (internal quotation marks omitted)). In *Reed v. City of St. Charles*, we found blatant contradiction where the only evidence supporting the plaintiff's version of events was his self-serving testimony—testimony that was conclusively contradicted by the plaintiff's state-court guilty plea and other "overwhelming" evidence. 561 F.3d 788, 791-92 (8th Cir. 2009). The officers argue on appeal that Setchfield's deposition testimony, affidavits, and complaint so conflict with one another that we must discount Setchfield's version of events as blatantly contradictory.

Preliminarily, much of the officers' argument on this point focuses on differences between Setchfield's complaint and his subsequent deposition and affidavit. But in the district court, the officers did not argue that Setchfield's complaint was inconsistent with his later testimony. "Generally, we do not consider arguments raised for the first time on appeal." *Duffie v. City of Lincoln*, 834 F.3d 877, 882 (8th Cir. 2016); *see also Smith v. City of Des Moines*, 99 F.3d 1466, 1473 (8th Cir. 1996) ("We will not reverse a grant of summary judgment on the basis of an argument not presented below."); *Merechka v. Vigilant Ins. Co.*, 26 F.4th 776, 782 n.1 (8th Cir. 2022) (declining to consider evidence "never brought to the district court's attention"). Thus, the officers' arguments about inconsistencies between Setchfield's complaint and his subsequent deposition and affidavit are not properly before us, and we will not consider them.

The officers did argue before the district court that there were "inconsistencies" between Setchfield's deposition and an affidavit that he subsequently filed in support of his summary judgment opposition. But they fail to demonstrate that these "inconsistencies" amount to blatant contradictions. The primary "inconsistency" between the deposition and the affidavit is Setchfield's confusion over which officer played what role in the incident. At his deposition, it was apparent that Setchfield was uncertain which officer was Officer Seiverling and

which was Corporal Ronald.  After a lengthy discussion, he said that he "believe[d]" it was Officer Seiverling that he spoke to first and Corporal Ronald who hit him first. But he also said that "if [Corporal Ronald and Officers Seiverling and Williams] were in a room, I couldn't tell you who they were."  The later-filed supplemental affidavit explained that it was who he "now know[s] as Officer Scott Ronald" that he spoke to first and that it was "the person [he] now know[s] as Officer Seiverling" who first began punching him.

The officers argue that this affidavit is a "sham" that cannot be relied on.  "An affidavit is a sham affidavit . . . if it contradicts prior testimony or is a sudden and unexplained revision of testimony that creates an issue of fact where none existed before."  *Garang v. City of Ames*, 2 F.4th 1115, 1122 (8th Cir. 2021) (internal quotation marks omitted).  "However, if the affidavit merely explains portions of a prior deposition that may have been unclear, it is not a sham affidavit."  *Button v. Dakota, Minn. & E. R.R. Corp.*, 963 F.3d 824, 830 (8th Cir. 2020).  As the district court concluded, "[i]n his affidavit and during his deposition, Plaintiff described basically the same series of events that occurred when he arrived at the Outback Steakhouse parking lot."  The affidavit clarifies which officer did what—something about which at the deposition Setchfield was clearly confused.  Such clarification was entirely proper.  *See Taylor v. Cottrell, Inc.*, 795 F.3d 813, 818 (8th Cir. 2015) ("[A]n affidavit may be submitted to clarify ambiguities or confusion in deposition testimony.").  Neither the affidavit nor Setchfield's confusion over the identity of the officers creates a blatant contradiction requiring us to disregard Setchfield's side of the story.

The officers highlight other points of tension between Setchfield's deposition testimony and the affidavit as well.  For example, Setchfield mentioned for the first time in the affidavit that he asked to speak to a supervisor and that he intended to get out and get his walker when he parked his car.  Though new, this affidavit testimony does not contradict the deposition testimony, and it is not clear how the additional information contained in the affidavit could have altered the outcome of the summary judgment motion.  *Cf. Smith v. Kilgore*, 926 F.3d 479, 484 (8th Cir. 2019) (disregarding immaterial discrepancies in officers' testimony); *Smith v. City of*

*Brooklyn Park*, 757 F.3d 765, 773-74 (8th Cir. 2014) (same); *Bass v. City of Sioux Falls*, 232 F.3d 615, 618 (8th Cir. 1999) (concluding that an affidavit expanding on topics not specifically asked about in a deposition is not a sham). That said, there are differences between Setchfield's deposition and his affidavit—the district court acknowledged as much. But, as the district court explained, though "[d]efendants may use these discrepancies at trial to cast doubt on Plaintiff's credibility[,] . . . it is for the finder of fact to determine Plaintiff's credibility, not the Court on summary judgment." *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

We conclude that the record does not blatantly contradict Setchfield's version of the facts. Thus, the district court did not err in adopting it for purposes of summary judgment.

B.

Next, we turn to Officer Seiverling and Corporal Ronald's argument that they are entitled to summary judgment even on Setchfield's version of events.

1.

We first address the excessive-force claim. To demonstrate that the officers are not entitled to qualified immunity on his excessive-force claim, Setchfield must show first that the constitutional violation occurred, meaning that (1) he was seized and (2) the officers used objectively unreasonable force under the totality of circumstances. *Pollreis v. Marzolf*, 66 F.4th 726, 730 (8th Cir. 2023). There is no dispute that Setchfield was seized. Thus, our analysis focuses on the second element. "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). But the question is "whether the amount of force used was objectively reasonable under the particular circumstances." *Henderson v. Munn*, 439 F.3d 497, 502 (8th Cir. 2006). Circumstances relevant to the reasonableness of the officers' conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively

resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396; *see also Howard v. Kansas City Police Dep't*, 570 F.3d 984, 989 (8th Cir. 2009) (noting that, in considering these and other relevant factors, we "judge the reasonableness of the Officers' conduct from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" (internal quotation marks omitted)). "[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009).

The officers cling to two facts that they assert justify their use of force: (1) that Setchfield was "argumentative and shouting" in his conversation with Corporal Ronald and Officer Seiverling and (2) that Setchfield "pulled back" when the first officer reached into the car and therefore "resist[ed] arrest."[2] We reject the first justification. "[V]erbal abuse alone does not justify the use of any force. Force can only be used to overcome physical resistance or threatened force." *Bauer v. Norris*, 713 F.2d 408, 413 (8th Cir. 1983) (internal quotation marks omitted); *see also Shannon*, 616 F.3d at 863. And as to the claim that Setchfield "pulled back," Setchfield's affidavit said that he was "startled" and put up a hand in a "protective" manner when Officer Seiverling reached inside the vehicle and, in response, Officer Seiverling began punching him all over his body. A "protective" movement is not necessarily force—nor is it even clear what Setchfield meant by a "protective" movement. Moreover, the district court determined that Setchfield "[di]d not verbally or physically threaten[] either of the officers" and "did not strike either of the officers." Thus, viewing the facts in the light most favorable to Setchfield, Setchfield was an elderly man who was seated and buckled into his car seat when the officers began hitting him. He was not refusing to comply with the orders of the officers, he had made no threats to the officers or used any kind of force against

---

[2]The officers also attempt to rely on the complaint as evidence supporting their assertion that force was justified. The portions of the complaint the officers identify on appeal were not raised to the district court, and we therefore decline to consider them. *See Duffie*, 834 F.3d at 882; *Merechka*, 26 F.4th at 782 n.1.

them, and he was not a criminal suspect but instead a father who had come to pick up his son at the officers' request. Under these circumstances, it was unreasonable to use more than *de minimis* force against him.[3]

Since Setchfield has established his excessive-force claim, we next turn to the clearly established prong of the qualified-immunity analysis. *See Nieters v. Holtan*, 83 F.4th 1099, 1109 (8th Cir. 2023). "Broadly speaking, the right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment." *Id.* And, "[w]hile we are not to define the issue at a high level of generality, . . . a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Id.* (citation and internal quotation marks omitted). *Bauer*—which explicitly held that verbal abuse does not justify force—predates the incident in this case by nearly 40 years. *See* 713 F.2d at 413. And we have numerous other cases that "show that the identified general constitutional rule applies with obvious clarity to the conduct in question." *Nieters*, 83 F.4th at 1109; *see, e.g.*, *Montoya v. City of Flandreau*, 669 F.3d 867, 872-73 (8th Cir. 2012) (concluding it was clearly established that it was "unlawful . . . to perform a 'leg sweep' and throw to the ground a nonviolent, suspected misdemeanant who was not threatening anyone, was not actively resisting arrest, and was not attempting to flee"); *Copeland v. Locke*, 613 F.3d 875, 881-82 (8th Cir. 2010) (denying summary judgment on excessive-force claim where officer slammed a sixty-seven-year-old man against a parked vehicle, threw him to the ground, handcuffed him, kneed him in the back, and clamped down on the handcuffs); *cf. Winters v. Adams*, 254 F.3d 758, 765-766 (8th Cir. 2001) (finding

---

[3]The officers argue separately that Setchfield's "minimal injuries are indicative of *de minimis* use of force" and "a *de minimis* use of force is insufficient to support a Fourth Amendment claim." But there is a difference between *de minimis* force and *de minimis* injury. *De minimis* force is indeed insufficient to support a Fourth Amendment claim, but *de minimis* injury does not necessarily foreclose a claim. *See Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011). The force described by Setchfield was not *de minimis*. *See Westwater v. Church*, 60 F.4th 1124, 1129 (8th Cir. 2023); *cf. Copeland*, 613 F.3d at 881.

-10-

officer who hit plaintiff in face was entitled to qualified immunity where plaintiff in car was "kicking and flailing" at the officers and had hit the officer in the face prior to the officer hitting him); *Carpenter*, 686 F.3d at 650 (finding use of force reasonable where plaintiff refused to comply with police orders to offer his hands for handcuffing).  Thus, Setchfield had a clearly established right to be free from excessive force.  We affirm the denial of summary judgment based on qualified immunity as to the excessive-force claim.

2.

Turning to the unlawful-arrest claim, the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause."  U.S. Const. amend. IV.  A warrantless arrest is unreasonable and "violates the Fourth Amendment unless it is supported by probable cause." *Webster v. Westlake*, 41 F.4th 1004, 1010 (8th Cir. 2022).  To survive summary judgment on his unlawful-arrest claim, then, Setchfield must demonstrate both that he was arrested without probable cause and that this violation was clearly established.  *See District of Columbia v. Wesby*, 583 U.S. 48, 65 (2018).

"Probable cause exists to make a warrantless arrest when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1009 (8th Cir. 2017) (internal quotation marks omitted).  To determine if there is probable cause, courts must "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal quotation marks omitted).  Even if the arrest was made without probable cause, however, an officer is still entitled to qualified immunity based on the clearly-established prong if he had arguable probable cause, meaning that he "reasonably but mistakenly concluded that probable cause was present." *Wesby*, 583 U.S. at 65; *see Ehlers*, 846 F.3d at 1009.

-11-

Setchfield was originally arrested for interfering with the duties of a police officer. *See* Mo. Rev. Stat. § 575.150.1(2). The officers now argue that they also had probable cause to arrest Setchfield for resisting arrest. *See* Mo. Rev. Stat. § 575.150.1(1). Viewing the facts in the light most favorable to Setchfield, we conclude that the officers had neither actual nor arguable cause for Setchfield's arrest. Thus, the district court's denial of summary judgment based on qualified immunity was proper.

A person interferes with the duties of a police officer when he or she "knows or reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or stop an individual or vehicle, and for the purpose of preventing the officer from effecting the arrest, stop or detention, he or she . . . [i]nterferes with the arrest, stop or detention of another person by using or threatening the use of violence, physical force or physical interference." Mo. Rev. Stat. § 575.150.1(2). The officers assert that probable cause to arrest Setchfield for interference existed because (1) Setchfield approached Corporal Ronald while he was completing paperwork related to his son's arrest, began asking questions, and began shouting; (2) Setchfield refused to leave the area after being instructed to do so; and (3) Corporal Ronald informed Setchfield he was being arrested for interference with an officer.

As to the officers' first argument, we held in *Copeland* that there could be no probable cause for an arrest for interfering with a police officer when the "interference" was protected by the First Amendment—this includes "loud, profane language" and "expressive gestures." 613 F.3d at 880. The conduct described in *Copeland* is on all fours with Setchfield's conduct here. Setchfield's speech alone therefore cannot be the basis for probable cause, and, since *Copeland* predates this incident, this was clearly established at the time of Setchfield's arrest, foreclosing the possibility that it provided the officers with a basis for arguable probable cause.

As to the officers' second and third arguments, two fundamental problems exist. First, the only support for these arguments identified by the officers on appeal comes from citations to Setchfield's complaint. But the officers did not rely on the

complaint in the district court. So these arguments are not even properly before us. Second, the district court found that the genuine issues of fact remaining in this case include both "whether [Setchfield] ignored instructions and [whether he] was told he was under arrest." And we lack jurisdiction to review this determination at all. *See Johnson v. Jones*, 515 U.S. 304, 319-20 (1995); *Taylor v. St. Louis Cmty. Coll.*, 2 F.4th 1124, 1126-27 (8th Cir. 2021). It may be that, at trial, the jury determines that Setchfield did ignore officer directions or physically resisted in a manner that interfered with the officers' work, but those are not the undisputed facts before us today. And the facts before us, when viewed most favorably to Setchfield, did not provide the officers with probable cause or arguable probable cause to arrest Setchfield for violation of Mo. Rev. Stat. § 575.150.1(2).

The officers' other argument fails too. An individual resists arrest under Missouri law if "he . . . knows or reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or stop an individual or vehicle, and for the purpose of preventing the officer from effecting the arrest, stop or detention, he . . . [r]esists the arrest, stop or detention of such person by using or threatening the use of violence or physical force or by fleeing from such officer." Mo. Rev. Stat. § 575.150.1(1). Here, the officers once more rely on Setchfield's acknowledgment that he pulled back or made a "protective" movement when Officer Seiverling came running up yelling and reached into the car. Again, it is not clear what that movement was, but it is clear that the district court acknowledged his statement about that movement and still determined that Setchfield's conduct throughout the encounter "did not verbally or physically threaten[] either of the officers" and that he "did not strike either of the officers." When viewed in the light most favorable to Setchfield, his ambiguous "protective" movement provides no basis for actual or arguable probable cause to cause to arrest him for violation of Mo. Rev. Stat. § 575.150.1(1). Again, then, we conclude the officers lacked probable cause or even arguable probable cause. Thus, we conclude that the officers are not

entitled to summary judgment based on qualified immunity on the unlawful-arrest claim. [4]

Finally, the officers also argue that the district court erred by not adequately addressing whether arguable probable cause existed to arrest Setchfield and that we must remand for further consideration. We disagree. The district court found that "genuine issues of material fact remain concerning whether Defendants Seiverling and Ronald *reasonably believed* under the circumstances that there was probable cause to arrest" Setchfield for any crime—that is the arguable probable cause standard. (Emphasis added.) *See Ehlers*, 846 F.3d at 1009.

## III.

For the foregoing reasons, we affirm.

_____

---

[4]In their reply brief, the officers argue for the first time that they also had probable cause to arrest Setchfield for violating Section 210.010.A of the Ordinances of St. Charles County, Missouri, which prohibits "willfully fail[ing] or refus[ing] to comply with any lawful order or direction of a Law Enforcement Officer in the discharge of his official duties or to hinder, obstruct, resist, or otherwise interfere with the discharge of those duties." We do not consider this "argument[] raised for the first time in a reply brief." *Navarijo-Barrios v. Ashcroft*, 322 F.3d 561, 564 n.1 (8th Cir. 2003).